*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JANET A. VROMAN,

Plaintiff-Appellant,

UNPUBLISHED
June 9, 2022

v

No. 357179
Oakland Circuit Court
LC No. 2020-179357-NO

THE DESSERT OASIS, LLC,

Defendant-Appellee.

Before: CAMERON, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

In this premises liability action, plaintiff Janet A. Vroman appeals the trial court's order granting summary disposition in favor of defendant The Dessert Oasis, LLC. We affirm.

## I. BACKGROUND

In December 2017, plaintiff visited defendant's coffee shop during a nighttime holiday event in downtown Rochester, Michigan. As plaintiff attempted to walk from the sidewalk into defendant's store, she tripped and fell on a three-inch step that separated the sidewalk from a red-tiled piazza at the front of defendant's shop. Plaintiff allegedly suffered various injuries.

Plaintiff filed suit, alleging that defendant was responsible for the entry's dangerous condition and was liable for her injuries. Plaintiff asserted two separate claims against defendant: one for premises liability and one for general negligence.[1] Under the premises liability claim, plaintiff asserted that the step was not observable because there was no paint or other warning to indicate the existence of the elevated surface upon entering the shop. According to plaintiff, this hidden danger caused her fall.

Following discovery, defendant moved for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), arguing in relevant part that plaintiff's premises liability claim

---

[1] Plaintiff's general negligence claim is not at issue in the instant appeal.

should be dismissed because the allegedly hazardous condition was open and obvious and lacking any special aspects. Plaintiff opposed the motion, arguing that inadequate lighting precluded application of the doctrine and that the step was not an open and obvious danger because it was undetectable upon casual inspection.

After hearing oral argument, the trial court entered an order granting defendant's motion for summary disposition and dismissing plaintiff's complaint with prejudice. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision regarding a motion for summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020).

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (quotation marks, citations, and emphasis omitted).]

## III. ANALYSIS

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendant because there is a genuine issue of material fact regarding whether the hazardous condition was open and obvious upon casual inspection. We disagree.

"In a premises liability action, a plaintiff must prove the elements of negligence: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 693; 822 NW2d 254 (2012) (quotation marks and citation omitted).

Although "a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land," *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001), "[t]he possessor of land owes no duty to protect or warn of dangers that are open and obvious," *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012) (quotation marks and citation omitted). "Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an *objective standard*, calling for an examination of the objective nature of the condition of the premises at issue." *Id*. at 461 (quotation marks and citations omitted).

Stairs are generally discoverable on casual inspection. As this Court explained in *Lugo*, 464 Mich at 522:

> [B]ecause steps are the type of everyday occurrence that people encounter, under most circumstances, a reasonably prudent person will look where he is going, will observe the steps, and will take appropriate care for his [or her] own safety. Under ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary steps foolproof. Therefore, the risk of harm is not unreasonable. [Quotation marks and citation omitted; alteration in original.]

Additionally, "steps and differing floor levels, such as . . . uneven pavement . . . , are not ordinarily actionable *unless* unique circumstances surrounding the area in issue made the situation unreasonably dangerous." *Weakley v Dearborn Hts*, 240 Mich App 382, 385; 612 NW2d 428 (2000), remanded for reconsideration on other grounds 463 Mich 980 (2001) (quotation marks and citation omitted).

Plaintiff argues that the poor lighting created a question of fact. The plurality opinion in *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135; 565 NW2d 383 (1997), is helpful in determining how poor lighting can impact an open and obvious condition. In *Singerman*, the plaintiff was injured when he was hit by a hockey puck during a scrimmage. *Id*. at 137-138. The plaintiff "testified that he saw a player take the shot that hit him, but that due to poor lighting, he was unable to react as he normally would and avoid the puck that struck him." *Id*. at 138. Three justices in an evenly decided Court concluded that, because the low light conditions were constant and readily discernable by a reasonable observer, the low lighting was not uniquely dangerous as a matter of law:

> [T]here was nothing unusual about the inadequate lighting in the hockey rink to cause such a duty to remain. Plaintiff was an adult and an experienced hockey player. The lighting in the rink is alleged to have been consistently inadequate, not subject to unexpected fluctuations or other changes. There was nothing to prevent plaintiff from realizing that the rink was inadequately lighted. Nor was there any chance that he would forget the potentially hazardous condition, because the condition was constantly before him. Finally, plaintiff was not compelled to use the rink for work, or profit, or any other overriding or substantial motivation. He chose to participate in a dangerous sport under conditions that he knew to be dangerous. [*Id*. at 144.]

Three decisions from this Court, *Knight v Gulf & Western Props, Inc*, 196 Mich App 119; 492 NW2d 761 (1992), *Abke v Vandenberg*, 239 Mich App 359; 608 NW2d 73 (2000), and *Blackwell v Franchi*, 318 Mich App 573; 899 NW2d 415 (2017), also support the conclusion that the lighting did not cause the step in this case to become a dangerous or defective condition.

In *Knight*, the plaintiff "fell off a[n] [interior] loading dock approximately four or five feet into [a] loading dock well" that was located in the defendant's vacant warehouse. *Id*. at 121. The plaintiff testified at trial that the building was "very dark," that there were "[n]o warnings or barricades . . . placed near the edge of the loading dock," and that "he believed he was in one large

room and that the floor went all the way across the room." *Id*. Although the "plaintiff was aware that there were loading docks at the facility, he testified that he did not know that there was a loading dock located inside the building and that he had not been warned about an interior loading dock by [the] defendant or its . . . agent." *Id*. This Court concluded that the defendant was not entitled to a jury instruction on the open-and-obvious doctrine. *Id*. at 126. Specifically, this Court held:

> The fact that [the] defendant's vacant warehouse was not adequately lighted was both obvious and known to [the] plaintiff, but there was no evidence that he was aware or had reason to anticipate that there were interior loading docks that otherwise were not marked or blocked off. Certainly there was no need to warn [the] plaintiff of the dark. However, there was no evidence that [the] plaintiff could intelligently choose not to encounter the hidden risk posed by the recessed loading dock. The claimed cause of [the] plaintiff's injuries was not simply a dark warehouse; the claimed defect that allegedly caused [the] plaintiff's injuries was an unknown, unexpected, and unseen drop-off, which was claimed to be virtually undetectable in the dark interior. [The] [p]laintiff was told that there were loading docks, and the exterior docks were open and obvious, but the specific location of one of the docks in the interior of the warehouse was not disclosed and [the] plaintiff had no reason to know or expect that there were interior docks without a warning from [the] defendant. [*Id*. at 127-128.]

In *Abke*, 239 Mich App at 360, 362-363, this Court concluded that the trial court properly denied the defendant's motions for directed verdict and judgment notwithstanding the verdict because there was a factual dispute about how dark it was where the plaintiff fell into an unguarded truck bay, which was located in the defendant's barn.

Finally, in *Blackwell*, 318 Mich App at 577-578, this Court considered the applicability of the open-and-obvious-danger doctrine to a danger surrounded by darkness. The *Blackwell* plaintiff fell due to an eight-inch drop-off in elevation between a hallway and an unlit room that she was entering. *Id*. at 575. Photographs depicting the drop-off revealed that the danger "was not easily seen, even with sufficient lighting." *Id*. at 578. While acknowledging that the room was dark, the *Blackwell* Court ruled that in light of the conflicting testimony, it was a question of fact for the jury to decide whether an average person would have been able to readily observe the drop-off. *Id*. at 578-579.

We conclude that the lighting in this case is dissimilar to the lighting in *Knight*, *Abke*, and *Blackwell*. Indeed, although testimony supports that it was dark outside and that the area was "poorly lit," evidence nonetheless supports that there was lighting on the street and inside defendant's shop, as well as colored lights decorating defendant's building and the surrounding buildings. While plaintiff argues that individuals who were crowded on the sidewalk cast shadows that obscured the step, evidence also supports that individuals were standing on the piazza before plaintiff fell. This elevation would have alerted a reasonably prudent person of the step.

Moreover, the dangers in *Knight*, *Abke*, and *Blackwell* were unexpected. Indeed, the plaintiffs received no warnings of the dangers and had no reason to suspect the dangers. In this case, however, a reasonable person in plaintiff's position would have anticipated a step in front of

a store.[2]  Additionally, testimony supports that the red-tiled flooring was distinguishable from the sidewalk, and photographs of the scene support this testimony.[3]  Although the three-inch step that separated the sidewalk from the red-tiled piazza at the front of defendant's shop was consistent in color with the sidewalk, steps are a common occurrence that should reasonably be foreseen, *Lugo*, 464 Mich at 522, and a reasonable person in plaintiff's position would have foreseen the danger of potentially tripping on a step in front of a store.  Unlike the unique conditions addressed in *Knight*, *Abke*, and *Blackwell*, a reasonable person can expect to encounter a step at the threshold of a storefront.  Because the condition is not unusual and is to be anticipated by a reasonable person, the allegedly poor lighting had no impact on whether the step was open and obvious.

In sum, even when viewing the evidence in a light most favorable to plaintiff, we conclude that the trial court properly granted summary disposition in favor of defendant.  Because plaintiff does not argue that the step presented "special aspects" that "differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm," *Lugo*, 464 Mich at 517 (quotation marks omitted), we decline to address this issue.

Affirmed.

/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

---

[2] The fact that evidence supports that several other people stumbled on the step does not change this conclusion.  Indeed, the standard is "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 492 Mich at 460.

[3] While plaintiff argues that this Court should not rely on photographs because "the human eye is not the same as the technology of a modern camera," witness testimony overwhelmingly supported that the red tile was visible despite the poor lighting.